**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

**J.W. WILEY, Ed.D,**

**8:18-cv-1399**
                **Plaintiff,**         **(GLS/DJS)**

     **v.**

**SUNY PLATTSBURGH et al.,**

            **Defendants.**

_____

| **APPEARANCES:** | **OF COUNSEL:** |
|---|---|
| **FOR THE PLAINTIFF:** | |
| Satter Law Firm, PLLC | MIMI C. SATTER, ESQ. |
| 217 South Salina Street | PATRICK R. BLOOD, ESQ. |
| 6th Floor | |
| Syracuse, NY 13202 | |
| **FOR THE DEFENDANTS:** | |
| _SUNY Plattsburgh, John Ettling,_ | |
| _and Butterfly Blaise_ | |
| HON. LETITIA JAMES | KEITH J. STARLIN |
| New York State Attorney General | Assistant Attorney General |
| The Capitol | |
| Albany, NY 12224 | |
| _Vrinda Kumar_ | |
| Greenberg Traurig, LLP | CYNTHIA E. NEIDL, ESQ. |
| 54 State Street | |
| 6th Floor | |
| Albany, NY 12207 | |
| _SUNY Plattsburgh Student_ | |
| _Association_ | |
| Carter, Conboy, Case, Blackmore, | MICHAEL J. MURPHY, ESQ. |

Maloney & Laird, P.C.                    JONATHAN E. HANSEN, ESQ.
20 Corporate Woods Boulevard
Albany, NY 12211

**Gary L. Sharpe**
**Senior District Judge**

## MEMORANDUM-DECISION AND ORDER

### I. Introduction

Plaintiff J.W. Wiley brings this action against the following defendants: his former employer, SUNY Plattsburgh; its president, John Ettling; its Title IX coordinator, Butterfly Blaise; a student intern in its Title IX office, Vrinda Kumar; and the SUNY Plattsburgh Student Association. (Compl., Dkt. No. 1.)  Wiley alleges that he was discriminated against due to his race and gender, and eventually fired after complaining about discrimination involving the Title IX office.  (*See generally id.*)  Pending are three motions to dismiss filed by defendants.  For the following reasons, Kumar's motion, (Dkt. No. 14), is granted; the motion filed by Ettling, Blaise, and SUNY Plattsburgh, (Dkt. No. 15); is granted in part and denied in part; and the SUNY Plattsburgh Student Association's motion, (Dkt. No. 19), is granted.

### II. Background

**A.** **Facts**[1]

*1.   Background*

Wiley, an African American male, began working for SUNY Plattsburgh[2] as the Director of the Center of Diversity, Pluralism, and Inclusion in September 2000.  (Compl. ¶¶ 4, 10.)

In November 2004, SUNY Plattsburgh's Title IX coordinator, Lynda Ames, informed Wiley that a student in the Gender and Women's Studies (GWS) Department filed an informal sexual harassment complaint against him.  (*Id.* ¶ 12.)  Ultimately, the student did not move the complaint to the formal process and her claims were not substantiated.  (*Id.* ¶¶ 13-14.)  However, "rumors began to circulate around . . . campus, accusing . . . Wiley of being a sexual predator."[3]  (*Id.* ¶ 15.)

Five years later, professor Erin Mitchell, who was "operating" the GWS Department at the time, posted a comment on Wiley's blog that

---

[1] Unless otherwise noted, the facts are drawn from the complaint and presented in the light most favorable to Wiley.

[2] SUNY Plattsburgh is a public university in the SUNY system located in Clinton County, New York.  (Compl. ¶ 5.)  It receives federal financial assistance to fund university operations.  (*Id.*)

[3] Wiley believes these rumors were generated by the GWS Department.  (Compl. ¶ 16.)

referenced "his supposed 'widespread reputation for disrespect towards, harassment of, and sexually predatory behaviors against women'" as well as his "'insidious, and infamous, misogyny.'"  (*Id.* ¶¶ 16-17.)  "Soon thereafter, the previous rumors that [he] was a sexual predator resurfaced[.]"  (*Id.* ¶ 19.)

On a later undisclosed date, two of Wiley's students—both of whom were executive officers in the Student Association[4] and minored in GWS—filed complaints after Wiley showed a film in class that allegedly "made them question whether [he] would 'find any fault with pressuring his current female students to have sex with him'" and "created a hostile environment in the classroom."  (*Id.* ¶¶ 20, 22, 24.)  Ames was assigned to investigate the complaints.  (*Id.* ¶ 24.)

On February 18, 2010, Wiley asked Ettling[5] to remove Ames from the investigation given her involvement with the 2004 complaint and affiliation

_____

[4] The Student Association "is a student-run organization governed by elected executive council members and charged with voicing the concerns and interests of the student body.  Funded by student fees, [it] is also tasked with providing students [with] a variety of campus-wide events and activities."  (Compl. ¶ 9.)

[5] Ettling was appointed president of SUNY Plattsburgh in June 2004 and remained in that position at all times relevant to this action.  (Compl. ¶ 6.)

with the GWS Department.  (*Id.* ¶ 25.)  Professors Mitchell and Simona

Sharoni, the Chair of the GWS Department at the time, "provid[ed] harsh

criticism" of Wiley and his use of the film clip, (*id.* ¶ 23), and Wiley believed

that "Ames, Mitchell[,] and Sharoni were working in tandem to undermine

his reputation by labeling him, based on his race and gender, with

the . . . destructive, stereotype and behavior perpetrating the 'Myth of the

Black Rapist,'" (*id.* ¶ 27).  Although Ames remained involved in the

investigation, "the students' complaint regarding the film clip was found to

be baseless."  (*Id.* ¶¶ 28-29.)

Still, in March 2010, Wiley requested that Ettling "examine the

relationship between . . . Ames, Mitchell[,] and Sharoni, the GWS

Department, and the false accusations and rumors that continued."  (*Id.*

¶ 30.)  Specifically, Wiley complained that the circumstances "created a

hostile work environment related to his race and gender."  (*Id.* ¶ 31.)

### 2.    *Kumar's Involvement*

In 2018, Kumar, former president of the Student Association, began

interning in the Title IX office, where she worked with Blaise, the new Title

IX coordinator.[6]  (*Id.* ¶¶ 34-36.)  Blaise was also a professor in the GWS Department.  (*Id.* ¶ 36.)

On or about February 13, 2018, Kumar asked Wiley's former office assistant "personally invasive questions, including whether [she] had ever been sexually harassed by . . . Wiley."  (*Id.* ¶¶ 37-38.)  After learning of this interaction, Wiley met with Ettling and complained that Kumar was conducting a Title IX investigation into prior unsubstantiated complaints. (*Id.* ¶¶ 42-43.)

### 3.    The Public Forums

On or about February 14, 2018—the day after Kumar questioned Wiley's former office assistant—an unrelated racially charged incident occurred on campus.[7]  (*Id.* ¶ 46.)  In response, Black Onyx (a student group that advocated for racial justice) organized protests, called for the resignation of SUNY Plattsburgh administrators, and worked with the Student Association to propose a vote of "no confidence" for some administrators, including, "at the Student Association's insistence," Wiley.

---

[6] Blaise was hired by SUNY Plattsburgh for this position in July 2015.  (Compl. ¶ 7.)

[7] "The incident stemmed from a student's public SnapChat post, which read 'Lynching Niggers Tonight.'"  (Compl. ¶ 46.)

(*Id.* ¶¶ 48-49.)

On February 15, 2018, SUNY Plattsburgh held a public forum that was attended by approximately 700 people, including Ettling, Blaise, and Kumar. (*Id.* ¶ 50.) After members of the Student Association announced the "no confidence" results, those in attendance were offered a chance to speak. (*Id.* ¶ 51.) One student stated that "'I would like to have a Chief Diversity Officer that I haven't heard disrespects women.'" (*Id.* ¶ 52.) This comment "diverted the debate . . . to salacious and unfounded rumors about . . . Wiley." (*Id.* ¶ 53.) Thereafter, "Blaise stood up and made several provocative statements before encouraging attendees to come forward with allegations against . . . Wiley." (*Id.* ¶ 55.) Blaise said she was trying to do the right thing and that she "'wo[uld not] sit quietly while survivors [we]re being silenced.'" (*Id.* ¶ 56.)

A few days later, a flyer was posted in campus bathrooms that stated, "'We need a [C]hief [D]iversity [O]fficer who can protect us. But how can you do that when you sexually harass us?'" (*Id.* ¶ 58.)

*4. Complaints to Ettling*

On February 20, 2018, Wiley again complained to Ettling that Blaise and Kumar were abusing their Title IX positions. (*Id.* ¶ 59.) Ettling told

Wiley that he would not allow Blaise to conduct an investigation "because of her 'inability to be objective.'"[8]  (*Id.* ¶ 61.)  Ettling also told Wiley that he was not currently under investigation.  (*Id.*)

The next day, Wiley yet again complained to Ettling about Blaise and Kumar, as well as the rumors about him.  (*Id.* ¶ 64.)  Specifically, he "complained that the Title IX Office had become inappropriately associated with members of the GWS Department and the Student Association."  (*Id.*)  This time, Wiley indicated that he was seeking legal counsel and considering a lawsuit.  (*Id.* ¶ 65.)

### 5. The Facebook Post

On February 22, 2018, Wiley published a public Facebook post[9] that "rebutt[ed] the salacious allegations against him" and "suggested taking legal action against SUNY Plattsburgh and . . . Ettling."  (*Id.* ¶¶ 66, 107.)

---

[8] A month prior, New York's Supreme Court, Appellate Division highlighted Blaise's misinterpretation of the state education law and SUNY Plattsburgh's student conduct manual as they related to the definition of "affirmative consent."  *See Jacobson v. Blaise*, 157 A.D.3d 1072, 1079 (3d Dep't 2018).  The dissent went so far as to label Blaise's testimony before the Student Conduct Board "inaccurate and prejudicial" to a male student who was expelled based on a complaint that he sexually assaulted a female peer.  *See id.* at 1085.

[9] The specific content of the post is unclear.  (*See generally* Compl.)

Ettling saw the post and told Wiley to "'[t]one it down.'"  (*Id.* ¶ 67.)  Wiley defended the post as "his attempt to rebut the public accusations against his personal character and not simply his role as SUNY Plattsburgh's [Chief Diversity Officer]," and again complained about SUNY Plattsburgh's investigatory practices.  (*Id.*)

### 6.  Investigation and Termination

On March 8, 2018, Ettling notified Wiley that he was under investigation.  (*Id.* ¶ 68.)  As a result, he was "placed on alternate assignment, barred from being on campus, stripped of all supervisory authority, prohibited from teaching[,] and banned from communicating with individuals on campus."  (*Id.*)  Wiley alleges that this prevented him from "doing his job, further tarnished [his] reputation[,] and contributed to rumors of false allegations of sexually predatory behavior."  (*Id.* ¶ 72.)  Wiley also alleges, upon information and belief, that "Caucasian faculty [members] previously charged with . . . sexual misconduct were allowed to continue teaching, pending the outcome of [an] investigation."  (*Id.* ¶ 74.)  Furthermore, Wiley alleges, upon information and belief, that, during the investigation, Blaise, Kumar, and the Student Association were soliciting women to make allegations against him.  (*Id.* ¶ 73.)

On or around April 19, 2018, Wiley filed a charge of discrimination and retaliation with the Equal Employment Opportunity Commission (EEOC).[10] (*Id.* ¶ 75.) On June 22, 2018, Ettling fired Wiley without explanation. (*Id.* ¶ 76.)

## B. Procedural History

Wiley commenced this action on November 30, 2018. (*Id.*) He brings gender discrimination claims under Title IX of the Education Amendments of 1972 (Title IX)[11] against all defendants, (*id.* ¶¶ 77-103); a Section 1983[12] claim based on a violation of the First Amendment against SUNY Plattsburgh and Ettling, (*id.* ¶¶ 104-10); a claim under Title VII of the Civil Rights Act (Title VII)[13] based on race and gender discrimination, a Title VII retaliation claim, and various state law claims against SUNY Plattsburgh, (*id.* ¶¶ 111-49); as well as aiding and abetting claims under the New York State Human Rights Law (NYSHRL)[14] against Ettling, Blaise,

---

[10] Wiley does not attach a copy of the charge or a "right to sue" letter to his complaint.

[11] *See* 20 U.S.C. §§ 1681-1688.

[12] *See* 42 U.S.C. § 1983.

[13] *See* 42 U.S.C. §§ 2000e-2000e-17.

[14] *See* N.Y. Exec. Law § 296(6).

Kumar, and the Student Association, (*id.* ¶¶ 150-68).

On January 25, 2019, Kumar moved to dismiss the complaint under Fed. R. Civ. P. 12(b)(6), (Dkt. No. 14), and Ettling, Blaise, and SUNY Plattsburgh moved to dismiss the complaint under Fed. R. Civ. P. 12(b)(1) and (6), (Dkt. No. 15).  The Student Association's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) followed.  (Dkt. No. 19.)

### III.  Standard of Review

**A.**   **Rule 12(b)(6)**

The standard of review under Fed. R. Civ. P. 12(b)(6) is well settled and will not be repeated here.  For a full discussion of the standard, the court refers the parties to its prior decision in *Mills-Sanchez v. Research Found. for State Univ. of N.Y.*, 1:18-cv-723, 2019 WL 2549726, at *4-5 (N.D.N.Y. June 20, 2019), *appeal filed*, No. 19-2405 (2d Cir. Aug. 6, 2019).

**B.**   **Rule 12(b)(1)**

Under Fed. R. Civ. P. 12(b)(1), the standard of review is similar to that of Rule 12(b)(6), except that the court "may refer to evidence outside the pleadings . . . [and] [a] plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists."

11

*Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).[15]

## IV. Discussion

### A. Title IX Claims Against Individuals

Wiley's claims against Ettling, Blaise, and Kumar, (Compl. ¶¶ 77-103), fail as a matter of law because there is no personal liability under Title IX.[16]  *See, e.g.*, *Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246, 257 (2009); *Doe v. Rensselaer Polytechnic Inst.*, No. 1:18-cv-1374, 2019 WL 181280, at *3 (N.D.N.Y. Jan. 11, 2019).

### B. State Law Claims

#### 1. Sovereign Immunity

Wiley concedes that sovereign immunity bars his state law claims against SUNY Plattsburgh.  (Dkt. No. 16 at 1 n.1, 21.)  As such, all of

---

[15] Unless otherwise noted, case quotations omit all internal quotation marks, alterations, footnotes, and citations.

[16] It should be noted that Wiley fails to respond to defendants' facially meritorious arguments in favor of dismissal of these claims. (*Compare* Dkt. No. 14, Attach. 1 at 9; Dkt. No. 15, Attach. 1 at 17, *with* Dkt. No. 16 at 15-20); *see Johnson v. Lew*, No. 1:13–CV–1072, 2015 WL 4496363, at *5 & n.6 (N.D.N.Y. July 23, 2015) ("In this District, when a non-movant willfully fails to oppose a legal argument asserted by a movant, the movant's burden with regard to that argument is lightened, such that, in order to succeed on that argument, the movant need only show that the argument possess[es] facial merit, which has appropriately been characterized as a 'modest' burden.").

Wiley's state law claims against SUNY Plattsburgh, (Compl. ¶¶ 111-18, 135-49), are dismissed for lack of subject matter jurisdiction. *See Dube v. State Univ. of N.Y.*, 900 F.2d 587, 594 (2d Cir. 1990); *Serrano v. New York State Dep't of Envtl. Conservation*, No. 12-CV-1592, 2013 WL 6816787, at *14 (N.D.N.Y. Dec. 20, 2013); *Fry v. McCall*, 945 F. Supp. 655, 661 (S.D.N.Y. 1996).

### 3. Aiding and Abetting Claims

Given that the only primary NYSHRL claims are dismissed based on sovereign immunity, the individual defendants cannot be liable for aiding and abetting those claims under § 296(6).[17] *See Soloviev v. Goldstein*,

---

[17] In his response, (Dkt. No. 16 at 21), Wiley relies on a decision from this District that stated "the Eleventh Amendment does not bar suit under NYSHRL § 296 against a state employee in his or her individual capacity." *Trostle v. State of New York*, 1:13-CV-709, 2016 WL 1175215, at *9 (N.D.N.Y. Mar. 24, 2016) (citing *Lore v. City of Syracuse*, 670 F.3d 127, 169 (2d Cir. 2012)). However, context matters. In *Trostle*, the plaintiff did not assert any claims under § 296 in her complaint, so the court made no ruling on whether the Eleventh Amendment, which barred plaintiff's § 297 claims against a state agency defendant, foreclosed plaintiff's aiding and abetting claims against individual defendants. *See Trostle*, 2016 WL 1175215, at *1, *8-*9. Moreover, the Second Circuit case cited in *Trostle* involved a suit against a municipality, and only stands for the proposition that liability may be imposed on individuals under the NYSHRL. *See Lore*, 670 F.3d 127, 168-69. Likewise, Wiley's reliance on *Dodd v. City Univ. of N.Y.*, 17 Civ. 9932, 2018 WL 4284289 (S.D.N.Y. Sept. 7, 2018), (Dkt. No. 16 at 21), is misplaced because that court "ha[d] no occasion to reach th[e] issue" of whether "claims against the individual

104 F. Supp. 3d 232, 253 (E.D.N.Y. 2015) ("[A]s [p]laintiffs cannot state a claim against CUNY under [the] NYSHRL . . . because the claims are barred by the Eleventh Amendment, [p]laintiffs also cannot state a claim against the [i]ndividual CUNY [d]efendants in their individual capacities as aiders and abettors."), *appeal dismissed*, No. 15-1865 (2d Cir.).  As such, Wiley's aiding and abetting claims against Ettling, Blaise, Kumar, and the Student Association, (Compl. ¶¶ 150-68), are dismissed.

## C.  **Section 1983: First Amendment Retaliation**

### 1.  *SUNY Plattsburgh*

Wiley cannot state a Section 1983 claim against SUNY Plattsburgh because "'the State University is not a "person" within 42 U.S.C. § 1983.'" *Syrkin v. State Univ. of N.Y.*, No. 04-CV-4336, 2005 WL 2387819, at *3 (E.D.N.Y. Sept. 29, 2005) (quoting *Blanton v. State Univ. of N.Y.*, 489 F.2d 377, 382 (2d Cir. 1973)).  As such, Wiley's Section 1983 claim against SUNY Plattsburgh, (Compl. ¶¶ 104-10), is dismissed.

### 2.  *Ettling*

---

defendants must be dismissed, on the ground that the individual defendants cannot be liable for aiding and abetting an institution that is not subject to suit under the [NYS]HRL."  2018 WL 4284289, at *9.

Wiley's Section 1983 claim against Ettling in his individual capacity[18] is premised on the theory that Wiley's removal from campus and subsequent termination were in retaliation for exercising his First Amendment right to petition the government for redress of grievances. (Compl. ¶¶ 104-10.)  Specifically, he references two such petitions: (1) "complaining to . . . Ettling about animus motivated by race and gender" and (2) "posting complaints to his public social media account."  (*Id.* ¶¶ 106-07.)  Ettling argues that Wiley's claim must be dismissed because such personal grievances are not matters of public concern protected by the First Amendment.  (Dkt. No. 15, Attach. 1 at 22.)

"Speech involves matters of public concern when it can be fairly considered as relating to any matter of political, social, or other concern to the community, or when it is a subject of . . . general interest and of value and concern to the public."  *Lane v. Franks*, 573 U.S. 228, 241 (2014). "Whether an employee's statement addresses a matter of public concern must be determined by the content, form[,] and context of a given

_____

[18] To the extent that Wiley attempts to bring a claim against Ettling in his official capacity, it is dismissed for the same reason as his claim against SUNY Plattsburgh.  *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) ("[N]either a State nor its officials acting in their official capacities are persons under § 1983.").

statement." *Connick v. Myers*, 461 U.S. 138, 159 (1983).  Generally, "corruption in a public program and misuse of state funds . . . involves a matter of significant public concern." *Lane*, 573 U.S. at 241.

At this stage, it can be reasonably inferred that some of Wiley's complaints to Ettling addressed alleged corruption concerning SUNY Plattsburgh's Title IX office.  (Compl. ¶¶ 59, 64.)  As such, this portion of Ettling's motion is denied.  However, it cannot be reasonably inferred that Wiley's Facebook post addressed a matter of public concern.  Given that Wiley failed to include the specific content of the post in his complaint, the court can only rely on his characterization of the same: the post "rebutt[ed] the salacious allegations against him" and "suggested taking legal action," (Compl. ¶ 66), which was "his attempt to rebut the public accusations against his personal character and not simply his role as SUNY Plattsburgh's [Chief Diversity Officer]," (*id.* ¶ 67).  Thus, by Wiley's own account, the post involved personal grievances concerning his own self-interest.  *See Ezekwo v. N.Y.C. Health & Hosp. Corp.*, 940 F.2d 775, 781 (2d Cir. 1991) (holding physician's complaints were not a matter of public concern where primary aim was to protect own reputation, not the public welfare).  As such, Wiley's Section 1983 claim is dismissed to the extent

16

that it is premised on his Facebook post.  (Compl. ¶ 107.)

## D.    Remaining Claims Sgainst SUNY Plattsburgh

### 1.    *Discrimination Claims*

In order to state a cognizable Title VII[19] discrimination claim, a plaintiff must demonstrate, among other things, that "[an] adverse action occurred under circumstances giving rise to an inference of discrimination." *Walsh v. N.Y.C. Housing Auth.*, 828 F.3d 70, 75 (2d Cir. 2016)*.*  "An inference of discrimination can arise from circumstances including, but not limited to, . . . the more favorable treatment of employees not in the protected group; or the sequence of events leading to the plaintiff's discharge."  *Littlejohn v. City of New York*, 795 F.3d 297, 312 (2d Cir. 2015).  "[A]t the initial stage of a litigation, the plaintiff's burden is minimal—he need only plausibly allege facts that provide at least minimal support for the proposition that the employer was motivated by discriminatory intent."  *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 86-87 (2d Cir. 2015).

The court agrees with SUNY Plattsburgh that the crux of Wiley's

---

[19] All of Wiley's discrimination claims are properly analyzed pursuant to Title VII principles.  *See Summa v. Hofstra Univ.*, 708 F.3d 115, 123-24, 131 (2d Cir. 2013).

complaint contains only vague and conclusory allegations of discrimination. (Dkt. No. 15, Attach. 1 at 5-16.)  That is, the majority of the complaint merely relays Wiley's subjective beliefs that defendants were discriminating against him but lacks factual support.[20]  (Compl. ¶¶ 16, 27, 30-31, 82, 97.) Even accepting Wiley's allegation made upon "information and belief," that the the rumors about him started in the GWS Department, (*id.* ¶ 16), there are no facts from which it can be reasonably inferred that these rumors were spurred by his race or gender—as opposed to prior complaints of misconduct against him, (*id.* ¶¶ 13-15, 19, 22, 24, 52-53, 58).  Even if the complaints levied against him were induced by discriminatory beliefs—which there are no allegations to support—the individuals making such complaints are not parties to this action.  (*Id.* ¶¶ 12, 22.)  Moreover, although Wiley suggests bias in prior investigations, none of the complaints were substantiated.  (*Id.* ¶¶ 14, 25, 29.)  In sum, Wiley's subjective belief that he was stereotyped based on the "Myth of the Black Rapist," (*id.* ¶ 27),

---

[20] Compounding this issue is Wiley's "fail[ure] to clearly state which of the facts alleged [in the complaint] apply to which individual [claims] against which defendant."  (Dkt. No. 15, Attach. 1 at 5); *see Mills-Sanchez*, 2019 WL 2549726, at *5 ("When a party is represented by counsel, a court should not have to engage in guesswork to address every possible legal theory that is not clearly delineated in h[is] complaint.").

has no basis in fact.  *See Nungesser v. Columbia Univ.*, 169 F. Supp. 3d 353, 365 (S.D.N.Y. 2016) ("[Plaintiff]'s conclusory statement that he was publicly branded a serial rapist because he is a male, is belied by the facts he pleads."); *Doe v. Univ. of Mass.–Amherst*, No. 14–cv–30143, 2015 WL 4306521, at *8 (D. Mass. July 14, 2015) (dismissing Title IX claim where plaintiff cited only comments that targeted him as someone accused of sexual assault, not comments "suggestive of gender bias").

Similarly, there is no indication that any of the comments made about Wiley at the public forum or posted on flyers thereafter were related to his race or gender.  (*Id.* ¶¶ 48-49, 51, 53-56, 58.)  In sum, Wiley's discrimination claims boil down to a classic false syllogism that fails to support an inference of discrimination: "I am (fill in the protected class of which the plaintiff is a member); something bad happened to me . . . ; therefore the bad thing happened because I am (fill in the protected class)."  *Pertillar v. AAA W. and Cent. N.Y.*, 5:16-cv-238, 2018 WL 583115, at *6 (N.D.N.Y. Jan. 26, 2018); *cf. Jones v. Target Corp.*, 15-CV-4672, 2016 WL 50779, at *3 (E.D.N.Y. Jan. 4, 2016) ("Plaintiff's allegations fail to support a plausible inference of discrimination and []he has not plausibly alleged that h[is] gender was a motivating factor in h[is] termination.");

*Khaleel v. Swissport USA, Inc.*, No. 15-CV-4880, 2015 WL 5307733, at *2 (E.D.N.Y. Sept. 10, 2015) (dismissing discrimination claim because "[e]ven under the most liberal interpretation of [plaintiff's] complaint, he provides no facts that could possibly connect or link any adverse employment action to a protected status"); *Moccio v. Cornell Univ.*, 889 F. Supp. 2d 539, 574 (S.D.N.Y. 2012) ("That [plaintiff] was a []man and was terminated is not nearly enough to support an inference of discrimination.").

Furthermore, Wiley's allegation that Caucasian employees charged with sexual misconduct were allowed to continue teaching pending an investigation, (Compl. ¶ 74), is a "naked assertion[] devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see Ruston v. Town Bd. of Skaneateles*, 610 F.3d 55, 59 (2d Cir. 2010) ("Under *Iqbal*, factual allegations must be sufficient to support necessary legal conclusions . . . [and must] plausibly suggest an entitlement to relief."). Critically missing are facts to support the notion that similarly situated employees were treated differently. *See Winston v. City of New York*, No. 12–CV–395, 2013 WL 4516097, at *2-*3 (E.D.N.Y. Aug. 23, 2013) (disregarding conclusory allegation that defendants "did not treat similarly situated male supervisors in [the same] manner"); *Howard v. MTA*

*Metro–N. Commuter R.R.*, 866 F. Supp. 2d 196, 208 (S.D.N.Y. 2011) ("[T]o show that similarly situated individuals were treated differently . . . it is insufficient to offer little more than conclusory statements or sweeping allegations."); *Dickerson v. State Farm Fire & Cas. Co.*, No. 95 Civ. 10733, 1996 WL 445076, at *4 (S.D.N.Y. Aug. 1, 1996) ("Plaintiff['s] naked allegation of racial selectivity is not enough.").

As such, Wiley's discrimination claims under Title IX, Title VI, and the NYSHRL against SUNY Plattsburgh, (Compl. ¶¶ 77-103, 119-29, 135-44), are dismissed.

### 2. Retaliation Claims

Wiley's retaliation claims against SUNY Plattsburgh are premised on the theory that "[his] termination was an adverse employment action causally connected to [his] complaints about race and gender discrimination." (Compl. ¶ 133.) SUNY Plattsburgh argues that "[t]he [c]omplaint asserts speculative, wholly conclusory, boilerplate, unsupported allegations that the investigation and [Wiley's] termination were motivated by . . . retaliation." (Dkt. No. 15, Attach. 1 at 2.) However, it only discusses Wiley's retaliation claims in earnest for the first time in its reply papers*,* (Dkt. No. 18 at 4-6), which is insufficient because it does not permit Wiley

an opportunity to respond.  *See Carpenter v. Mohawk Valley Cmty. Coll.*, 6:18-cv-1268, 2019 WL 3338845, at *1 (N.D.N.Y. July 25, 2019).

To state a retaliation claim under Title VII,[21] a plaintiff must plausibly allege "(1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action."  *Littlejohn*, 795 F.3d at 315-16.  "The causal connection needed for proof of a retaliation claim can be established indirectly by showing that the protected activity was closely followed in time by the adverse action."  *Lovejoy–Wilson v. NOCO Motor Fuel, Inc.*, 263 F.3d 208, 224 (2d Cir. 2001); *see Lambert v. Trump Int'l Hotel & Tower*, 304 F. Supp. 3d 405, 423 (S.D.N.Y. 2018) (finding three months is, generally, the outer limit of time that can give rise to such an inference).

At this stage, it is enough that Wiley alleges that SUNY Plattsburgh removed him from campus less than a month after he complained to Ettling

---

[21] Such a claim is neither barred by the Eleventh Amendment, *see Baez v. New York*, 56 F. Supp. 3d 456, 464 (S.D.N.Y. 2014), *aff'd*, 629 F. App'x 116 (2d Cir. 2015), nor by the dismissal of Wiley's discrimination claims, *see Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002) ("A plaintiff may prevail on a claim for retaliation even when the underlying conduct complained of was not in fact unlawful[.]").

about perceived discrimination and suggested that he may take legal action, then fired him without explanation approximately two months after he filed an EEOC charge complaining of discrimination and retaliation. (Compl. ¶¶ 66-68, 75-76.)  Accordingly, this portion of SUNY Plattsburgh's motion is denied.

## E.    Title IX Claims Against the Student Association

The Student Association argues that Wiley fails to state a Title IX discrimination claim against it because there are insufficient allegations regarding its involvement in any investigation or Wiley's subsequent termination.  (Dkt. No. 19, Attach. 1 at 4.)  In his response, Wiley asserts that "the Student Association participated in discriminatory conduct by promoting . . . sexist stereotypes about [him]," "encouraging SUNY Plattsburgh to take adverse actions against [him] based on his gender," and "promot[ing] baseless and discriminatory rumors about [him], in addition to soliciting students, faculty and staff to bring complaints against [him]."  (Dkt. No. 21 at 6 (citing Compl. ¶¶ 165-66)).

To be sure, at this stage, Wiley need only "plead[] specific facts that support a minimal plausible inference of . . . discrimination [on account of sex]." *Doe v. Columbia Univ.*, 831 F.3d 46, 56 (2d Cir. 2016).  However,

the crux of the allegations cited in Wiley's response concerning the Student Association's "participat[ion] in discriminatory conduct" are vague and conclusory. (Dkt. No. 21 at 6 (citing Compl. ¶¶ 164-68)); *see In re Facebook, Inc.*, 797 F.3d 148, 159 (2d Cir. 2015) ("[The court is] not . . . bound to accept conclusory allegations or legal conclusions masquerading as factual conclusions."). Additionally, the specific allegations involving the Student Association or its former members, (Compl. ¶¶ 21-22, 34, 38, 49, 51, 73), do not support a minimal inference of gender discrimination. *See Pertillar*, 2018 WL 583115, at \*5-\*6; *Jones*, 2016 WL 50779, at \*3; *Nungesser*, 169 F. Supp. 3d at 364-65; *Univ. of Mass.–Amherst*, 2015 WL 4306521, at \*8.

Furthermore, there is nothing in the complaint from which it can be reasonably inferred that the Student Association "harbored discriminatory animus toward [him]," (Dkt. No. 21 at 6), as opposed to personal animus based on previous complaints and the perceived mishandling of a racial incident on campus. *Cf. Sanches v. Carrollton-Farmers Branch Indep. Sch. Dist.*, 647 F.3d 156, 165 (5th Cir. 2011) (dismissing Title IX claim where there was "nothing in the record to suggest" that defendant's conduct "was motivated by anything other than personal animus");

*Eskenazi–McGibney v. Connetquot Cent. Sch. Dist.*, 84 F. Supp. 3d 221, 233 (E.D.N.Y. 2015) (dismissing claims where plaintiffs failed to allege non-conclusory facts connecting harassment to a protected characteristic, and harassment may have been based on some other reason "such as personal animus").  And, for the reasons previously discussed, it cannot be reasonably inferred that the Student Association participated in any discriminatory conduct on the part of SUNY Plattsburgh.  *See supra* Part IV.D.2.  As such, Wiley's Title IX claims against the Student Association, (Compl. ¶¶ 77-103), are dismissed.[22]

## V. Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that Kumar's motion to dismiss (Dkt. No. 14) is **GRANTED**; and it is further

**ORDERED** that the motion to dismiss filed by SUNY Plattsburgh, Ettling, and Blaise (Dkt. No. 15) is **GRANTED IN PART and DENIED IN PART** as follows:

**DENIED** with respect to Wiley's Section 1983 claim against

---

[22] The court does not reach the issue of whether the Student Association is a proper Title IX defendant.  (Dkt. No. 19, Attach. 1 at 3-4.)

Ettling, (Compl. ¶¶ 104-06, 108-10), and his Title VII retaliation claim against SUNY Plattsburgh, (*id.* ¶¶ 130-134); and

**GRANTED** in all other respects; and it is further

**ORDERED** that the Student Association's motion to dismiss (Dkt. No. 19) is **GRANTED**; and it is further

**ORDERED** that the Clerk terminate Butterfly Blaise, Vrinda Kumar, and the SUNY Plattsburgh Student Association as parties to this action; and it is further

**ORDERED** that the remaining parties shall file a responsive pleading in accordance with the rules; and it is further

**ORDERED** that the remaining parties contact Magistrate Judge Daniel J. Stewart to schedule further proceedings in accordance with this Memorandum-Decision and Order; and it is further

**ORDERED** that the Clerk provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

September 27, 2019
Albany, New York

Gary L. Sharpe
U.S. District Judge